UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| TIMOTHY ISAAC BRIGGS,<br><br>*Plaintiff*,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 2:25-cv-119-MJD |

**MEMORANDUM AND ORDER**

Plaintiff Timothy Isaac Briggs ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his disability insurance benefits ("DIB") and supplemental Security Income Benefits ("SSI") [Doc. 1]. Plaintiff filed a brief in support of his claims on January 22, 2026 [Doc. 17]. The Commissioner filed his response on June 11, 2026 [Doc. 24]. Plaintiff did not file a reply and the time for doing so has now passed. Therefore, this matter is ripe for review. For the reasons stated below, (1) Plaintiff's request for relief [Doc. 1] will be **DENIED**, and (2) the Commissioner's request that the administrative law judge's ("ALJ") final decision denying benefits be affirmed [Doc. 24] will be **GRANTED**.

## I. ADMINISTRATIVE PROCEEDINGS

According to the administrative record [Doc. 9 ("Tr.")], Plaintiff protectively filed a Title II application for DIB on August 17, 2023, alleging disability beginning January 1, 2013 (Tr. 205–206, 216–222). Plaintiff also protectively filed a Title XVI application for SSI on August 17, 2023 (Tr. 205–15). Plaintiff's claims were denied initially and on reconsideration at the agency level

(Tr. 95–103; 107–113). Plaintiff requested a hearing before an ALJ (Tr. 119–20). The hearing was conducted in person on November 14, 2024, in Kingsport, Tennessee (Tr. 26).

On November 27, 2024, the ALJ found Plaintiff had not been under a disability, as defined in the Social Security Act, at any time between his alleged onset of disability date (January 1, 2013) and the date of the ALJ's decision (November 27, 2024) (Tr. 37). The ALJ found that Plaintiff was not disabled for purposes of his DIB and SSI claims (Tr. 37). The Appeals Council denied Plaintiff's request for review on June 11, 2025 (Tr. 12), making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action on August 1, 2025 [Doc. 1].

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born on July 31, 1998 (Tr. 207), making him 14 years old on the alleged onset of disability date, which is considered a "younger individual age 18–44." 20 C.F.R. §§ 404.1563 and 416.963. He has at least a high school education and can communicate in English (Tr. 264). He has no past relevant work (Tr. 36).

### B. Medical Records

In his October 2023 Adult Disability Report, Plaintiff alleged disability due to Beckers Muscular Dystrophy (Tr. 263). In his subsequent Adult Disability Report, dated April 1, 2024, Plaintiff reported that there had been no change (for better or worse) in his physical condition (Tr. 307). Plaintiff also reported, however, that there had been a change in his daily activities due to his physical condition in that he was having "frequent falls" and was having to use a cane (Tr.

309). In his subsequent Adult Disability Report, dated May 29, 2024, Plaintiff's representative[1] reported that Plaintiff had a change in his physical or mental condition[2] and stated as follows:

> Mr. Briggs has several severe disorders/conditions that continue to worsen and increase in severity. He has been diagnosed with Becker's Muscular Dystrophy which has led to muscle weakness in his arms, neck, and lower body. Mr. Briggs has severe difficulty getting around. He is unable to walk without assistance. He is unable to sit or stand for long periods of time. His Becker's muscular dystrophy has caused him severe, constant pain that makes it hard to move at all. He suffers from frequent falls and is unable to get up without assistance. Mr. Briggs also suffers from learning disabilities, making it hard to understand/comprehend complex tasks. He is unable to use a computer and has difficulties when speaking.

(Tr. 316). Plaintiff's representative also reported that there had been a change in Plaintiff's daily activities due to his physical or mental conditions, repeating the aforementioned paragraph for explanation (Tr. 319). While there is no need to summarize all the medical records herein, relevant records have been reviewed.

### C. Hearing Testimony

At the hearing held on November 14, 2024 (the "Hearing"), Plaintiff and vocational expert Chelsea Brown ("VE") testified. Plaintiff was represented by Attorney Michael Bock. The Court has carefully reviewed the transcript of the Hearing (Tr. 43–55).

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

[1] Plaintiff's appointed representative was Attorney Haley Morgan Henry (Tr. 114–117).

[2] The date this change occurred was reported as January 1, 2013, the date of Plaintiff's disability (Tr. 316).

of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

20 C.F.R. § 404.1520(a)(4)(i–v); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512–13 (6th Cir. 2010).

### B. The ALJ's Findings

At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 1, 2013, the alleged onset of disability date (Tr. 28). At step two, the ALJ found Plaintiff had the following severe impairments: "muscular dystrophy, mild mitral valve and tricuspid valve regurgitation" (Tr. 29). The ALJ found no severe medically determinable mental impairment (Tr. 29). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 29).[3] Next, taking all this information into consideration, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following additional limitations:

- [N]o climbing or crawling and no more than occasional balancing, stooping, kneeling, or crouching. The claimant also cannot have concentrated exposure to vibration or hazards.

(Tr. 29–30) (formatted for clarity).

At step four, the ALJ found Plaintiff had no past relevant work pursuant to 20 C.F.R. § 404.1565 (Tr. 36). At step five, the ALJ found there were unskilled sedentary occupations with jobs existing in significant numbers in the national economy available to a person with Plaintiff's RFC, including: (1) Order Clerk (DOT 209.567-014) (SVP 2), with approximately 15,000 jobs in the national economy; and (2) Touchup Screener (DOT 726.684-110), with approximately 25,000 jobs in the national economy (Tr. 36–37).

---

[3] The ALJ considered Plaintiff's muscular dystrophy under Listing 11.13 but found the requirements were not met. As noted by the ALJ, Plaintiff did not argue that his condition (muscular dystrophy) met the listing; nor did any medical source opine that Plaintiff's condition medically equaled the severity of this or any other listing (Tr. 29).

These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time between his alleged onset of disability date and the date of the ALJ's decision (Tr. 37).

## IV. ANALYSIS

Plaintiff argues the ALJ's decision is not supported by substantial evidence. As a result, he contends the decision should be reversed or vacated and remanded for further administrative proceedings [Doc. 1 at Page ID # 2]. Plaintiff asserts this relief is justified due to the following alleged errors:

> 1. The ALJ's assessment of the medical opinion evidence is not supported by substantial evidence where he found the opinions of Dr. Campbell persuasive but then omitted dispositive limitations contained in th[ese] opinions from the residual functional capacity ("RFC") assessment without explanation.
>
> 2. The ALJ's evaluation of Plaintiff's subjective testimony is not supported by substantial evidence where the ALJ failed to evaluate the veracity of Plaintiff's testimony utilizing the relevant factors set forth in SSR 16-3p.

[Doc. 17 at Page ID # 586].

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474

F.3d at 833. Furthermore, the evidence must be "substantial" in light of the record as a whole, "taking into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

A court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). A court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant. *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (assignments of error not made by claimant waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)).

### B. Residual Functional Capacity ("RFC")

A claimant's RFC is the most they can do—not the least—despite their impairments. 20 C.F.R. § 404.1545(a)(1); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155–56 (6th Cir. 2009). The RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). An ALJ is responsible for determining a claimant's RFC after reviewing all the relevant evidence in the record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

An ALJ develops the RFC based on all relevant evidence, including the claimant's subjective statements about his limitations and medical opinion evidence. *See* 20 C.F.R. §§ 404.1592, 404.1545. In evaluating medical opinion evidence, under 20 C.F.R. § 416.920c, an ALJ is required to consider multiple factors, including: (1) supportability, (2) consistency, (3) a source's relationship with the claimant, (4) specialization, and (5) other supporting or contradicting factors. This rule, which applies only to claims filed on or after March 27, 2017, "notably reduces the articulation standards required for ALJs in assessing medical source opinions" from the standards applicable to earlier-filed claims. *Gourley v. Comm'r of Soc. Sec.*, No. 2:21-CV-99, 2022 WL 4546376, at *5 (E.D. Tenn. Sept. 28, 2022) (cleaned up and citation omitted). "Supportability and consistency will be the most important factors, and usually the only factors the ALJ is required to articulate." *Jones v. Berryhill*, 392 F. Supp. 3d 831, 839 (M.D. Tenn. Aug. 2, 2019) (citation omitted). While the ALJ is required to consider the other relevant factors, the ALJ is not required to explain their consideration in the written decision. 20 C.F.R. § 416.920c(b)(2).

The regulations explain that, regarding supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or

her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 920c(c)(1). Regarding consistency, the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 920c(c)(2).

i. Lifting Limitation

Plaintiff argues that the ALJ erred by finding Dr. Campbell's medical opinion persuasive but then failing to include in the RFC the lifting limitation of 1–2 pounds set forth by Dr. Campbell [*see* Doc. 17 at Page ID #592–97]. The Commissioner responds that Plaintiff overstates the ALJ's adoption of Dr. Campbell's medical opinion. Specifically, the Commissioner argues that the ALJ did not find Dr. Campbell's assessment of Plaintiff's lifting restrictions to be fully persuasive, but rather only persuasive "to the extent that they [were] consistent with sedentary exertion," [Doc. 24 at Page ID # 620, citing Tr. 33)], which involves "lifting no more than 10 pounds at a time." 20 C.F.R. § 404.1567.[4] The Commissioner further asserts that the ALJ had no obligation to mirror medical expert findings in the RFC and that the RFC limitations were supported by substantial evidence in the record as a whole [Doc 24 at Page ID # 620–21].

---

[4] Sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567.

In this case, the ALJ described Dr. Campbell's consultative examination and related medical opinion as follows:

> [T]he claimant underwent consultative examination with Douglas A. Campbell, M.D., in February 2024 as part of the disability application process. The claimant reported episodic symptoms of muscular dystrophy, explaining "one day I can't do nothing and other days I can get up and walk around." The claimant reported that he was unable to climb stairs, get out of some chairs without assistance, stand for more than 30 minutes or walk for less on "good days" and that he "can't run, ever and if I go to the store I have to have a buggy." His associated symptoms included back pain, numbness, and tingling, as well as multiple falls. Regarding his activities of daily living, he reported that he could brush his teeth, prepare meals, put on shirt or reach into cabinets, and drive independently and could [get] laundry out of dryer with accommodating position and if not more than 10 pounds from the floor. (5F/2).
>
> On examination, the claimant exhibited normal station but "short-strided gait with low elevations" without the use of an assistive device. His right and left lower extremity strength was measured at 3/5; his upper extremity and grip strength was 5/5. Sensation was intact to light touch and deep tendon reflexes were normal (2+) at knees and biceps. He was able to get on and off examination table, tandem walk, walked on heels, and walked on toes with difficulty. His straight leg raise testing was normal bilaterally in both seated and supine positions. He was able to grasp and shake hands on the right and left with equal strength and exhibited normal finger to nose testing. His range of motion was normal throughout; the remaining physical examination findings were normal. (5F/3-6).
>
> ***
>
> Following his February 2024 consultative examination of the claimant, **Dr. Campbell opined that the claimant could sit for 8 hours a day without limitation but able to stand for 5 hours a day, walk for 4 hours a day, and occasionally lift and carry 1–2 pounds with either hand as limited by fall risk and pain.** (5F/7).

(Tr. 33) (emphasis added).

Having considered Dr. Campbell's medical opinion, the ALJ then found as follows:

> **The undersigned is persuaded by Dr. Campbell's opined abilities and limitation in sitting, lifting, carrying, and load bearing to the extent that they are consistent with sedentary exertion.** These limitations are consistent with the claimant's reported limitations, the longitudinal medical history documenting some reported falls, and the opinions of treating physician Keith Cook, discussed below. The undersigned is not persuaded by the opined limitations in standing and walking.

> Though reasonably well-supported by the consultative examination findings, the undersigned finds that more restrictive deviation to sedentary exertion is warranted consistent with the claimant's function report, testimony, and longitudinal treatment records.

(Tr. 33) (emphasis added).

As set forth above, the ALJ evaluated Dr. Campbell's medical opinion, discussed how (and to what degree) he found it persuasive, and explained this reasoning using the analysis required under the regulations. First, with regard to Dr. Campbell's lifting restriction findings, the ALJ was persuaded by "Dr. Campbell's opined abilities and limitation in sitting, lifting, carrying, and load bearing *to the extent that they are consistent with sedentary exertion*." (Tr. 33) (emphasis added). Dr. Campbell's lift limitation of 1–2 pounds is not consistent with sedentary exertion, which "requires the ability to lift no more than ten pounds at a time" *See* SSR 83-10, 1983 WL 31251, at *5 (1983). In short, the ALJ did not find Dr. Campbell's 1–2-pound lifting limitation persuasive because it was not consistent with sedentary exertion.

Second, Plaintiff briefly asserts that if the ALJ had found the 1–2-pound lifting restriction not to be persuasive, the ALJ failed to properly explain this reasoning through the analysis of the supportability and consistency factors. [Doc. 17 at Page ID # 594 (citing 20 C.F.R. § 404.1520c(b)(2)]. However, the ALJ's analysis included both factors. First, the ALJ described Dr. Campell's examination records and found that Dr. Campbell's opinion was "reasonably well-supported" by his medical examination findings (Tr. 33). Second, with regard to consistency, the ALJ compared Dr. Campbell's opinion to the other evidence of record, including the longitudinal medical history, the opinion of treating physician Keith Cook, M.D., and Plaintiff's statements about his own limitations (Tr. 33–36).

For example, the ALJ discussed the lifting restrictions set forth in the June 2024 medical opinion provided by treating physician Keith Cook, M.D., which the ALJ found persuasive (Tr. 33–34).[5] Therein, Dr. Cook opined that Plaintiff could lift and carry ten pounds on an occasional basis and five pounds on a frequent basis (Tr. 33–34; 545). The ALJ stated, without qualification, that he was "persuaded by Dr. Cook's opinions regarding the claimant's reduced ability to lift, carry, and load bear." (Tr. 34).[6] Furthermore, the ALJ considered Plaintiff's report to Dr. Campbell, regarding his daily activities, that he could get "laundry out of the dryer with accommodating position and if not more than 10 pounds from the floor." (Tr. 33; 532). And, the ALJ also considered Plaintiff's testimony that the most Plaintiff could lift from countertop height would be ten pounds using both hands (Tr. 30; 47–48).[7] Accordingly, the ALJ properly considered both supportability and consistency factors.

---

[5] The ALJ found other portions of Dr. Cook's findings to be somewhat persuasive (limitations re environmental exposure to hazards and vibrations; limitations in postural activities). The ALJ found other portions of Dr. Cook's findings to be not persuasive (limitations in walking, standing, sitting, manipulation, and the need for frequent breaks). These portions of Dr. Cook's findings are not at issue here.

[6] Plaintiff argues that the ALJ found Drs. Campbell and Cook's medical opinions to be "equally persuasive" but failed to engage in the analysis required by the regulations in doing so. *See* [Doc. 17 at Page ID # 595–96 (citing 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3)]. However, the ALJ made no explicit or implicit finding that these opinions were "equally persuasive"—rather, the ALJ found Dr. Campbell's opinion persuasive *to the extent it was consistent with sedentary exertion*, whereas the ALJ found Dr. Cook's opinion persuasive without condition. *See Chigano v. Kijakazi*, No. 3:20-CV-00256-HBG, 2021 WL 3934475, at *11 (E.D. Tenn. Sept. 2, 2021) ("The ALJ need not explain how he considered each factor in 20 C.F.R. § 404.1520c(c)(3)–(5) absent the ALJ finding that two opinions are "equally" persuasive. *See* 20 C.F.R. § 1520c(b)(2), (3). The Court finds that Plaintiff's argument here fails because the ALJ made no such finding"))].

[7] Finally, in support of the physical limitations set forth in the RFC, the ALJ discussed the medical opinions of the state agency medical consultants and adopted RFC limitations that were *more* restrictive than what they recommended, limiting the claimant to sedentary exertion (rather than light) and further reducing postural functions (Tr. 34–35).

Ultimately, the RFC is the most a Plaintiff can do. Here, the ALJ found that Plaintiff was capable of lifting no more than ten pounds and cited to substantial evidence in support of that finding, to include a medical opinion by treating physician Dr. Cook, Plaintiff's testimony, and medical records. To the degree Plaintiff argues that the ALJ did not give proper weight to Dr. Campbell's opinion related to the 1–2-pound lifting restriction, the Court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387.

ii. ALJ's Evaluation of Plaintiff's Subjective Testimony

Second, Plaintiff argues that the ALJ failed to properly evaluate his subjective testimony [Doc. 17 at Page ID # 600–601]. Reviewing courts must afford an ALJ's credibility determination great weight and deference, particularly because the ALJ had the opportunity of hearing a witness's testimony. *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488–89 (6th Cir. 2005) (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003)). The Court is limited in assessing whether the ALJ's explanations for discrediting the claimant's allegations are reasonable and supported by substantial evidence in the record. *Id.* The evaluation of a claimant's subjective complaints rests with the ALJ and should not be disturbed absent "compelling reasons." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013).

An ALJ follows a two-step process when evaluating an individuals' symptoms. SSR 16-3p, 2017 WL 5180304, *3 (Oct. 25, 2017); 20 C.F.R. § 404.1529(c). First, an ALJ determines whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. SSR 16-3p, 2017 WL 5180304 at *3. Second, an ALJ evaluates the intensity and persistence of an individual's symptoms (such as pain) and

determines the extent to which an individual's symptoms limit his or her ability to perform work-related activities. *Id.* at *4.

In so doing, an ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (i) the claimant's daily activities; (ii) the duration, frequency, and intensity of the pain; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication and side effects; (v) treatment, other than medication; (vi) any measures used to relieve pain or other symptoms; and (vii) any other factors concerning an individual's symptoms. *Id.* at *7–8. Further, "[i]f there is no information in the evidence of record regarding one of the factors, [an ALJ] will not discuss that specific factor in the determination or decision because it is not relevant to the case." *Id.* at *8.

Plaintiff argues that, while the ALJ properly found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[]" (Tr. 31), the ALJ failed to complete the second part of the analysis, which is to evaluate the "intensity, persistence, and limiting effects of [Plaintiff's] symptoms using the factors outlined in SSR 16-3p." [Doc. 17 at Page ID # 600–601]. The Commissioner argues that the ALJ did point to several relevant factors and that the Court can reasonably infer a sufficient explanation for the ALJ's credibility finding, given the evidence that the ALJ relies upon in his analysis [Doc. 24 at Page ID # 624–25].

In this case, the ALJ stated the two-step process:

> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques—that could reasonably be expected to produce claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the

> undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

(Tr. 30). Then, the ALJ went on to describe the Plaintiff's subjective complaints and hearing testimony as follows:

> The claimant has alleged disabling symptoms of Becker's muscular dystrophy, an inherited and progressive impairment (1A, 3A, 5A, 7A, 4E). While this appeal was pending, the claimant alleged a general worsening of his conditions since the alleged date of onset due to muscle weakness in his arms, neck, and lower body, constant pain, requiring assistance to ambulate, and experience frequent falls requiring assistance. (12E/2).
>
> At the hearing, the claimant testified that he was diagnosed with muscular dystrophy in childhood after collapsing while running bases. He testified that his condition had gotten a little bit worse and was slowly progressing; there is no treatment available. He testified that he experiences also shortness of breath and occasional chest pain due to his heart condition. He testified that he stopped working at AutoZone because he could not even change out a small car battery and that he stopped working at the factory because it was too much walking (Hearing Testimony).
>
> The claimant testified that standing and walking for long periods is difficult. He testified to relying on a buggy to walk with when shopping in stores or using a nonmedical walking stick to help balance. He testified that he must go at his own pace or risk falling. He testified that he cannot pick up an item weighing even a pound from the floor because he requires help from an object, like the hearing room table, to get up. He testified that the heaviest thing he could lift from countertop height would [be] 10 pounds using both hands. He testified that he was not able to move the next day due to pain in his lower back and calves if he does 4 hours of work. He testified that he could drive up to 45 an automatic before needing to stretch but that he is not strong enough to press the pressure plate on a clutch (Hearing Testimony).

(Tr. 30–31). The ALJ then described Plaintiff's testimony as "reasonably consistent" with his January 2024 function report (Tr. 31). The ALJ then made the following finding: "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms;

however, the [Plaintiff's] statement concerning the intensity, persistence and limiting effects of these symptoms are **not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision**." (Tr. 31) (emphasis added).

What follows, then, is a detailed discussion of the medical evidence revealing more intermittent or episodic issues related to Plaintiff's degree of limitation than he had alleged, addressing several factors set forth in 20 C.F.R. § 404.1529(c). For example, following his initial diagnosis, the ALJ noted that Plaintiff attended annual physicals and occasional treatments for acute illnesses and injuries (Tr. 31). The ALJ noted periodic/episodic abnormalities with Plaintiff's gait. For example, in August of 2014, Plaintiff presented with an impaired gait (Tr. 31). In October of 2014, Plaintiff presented with a normal gait and posture (Tr. 31). In August of 2015, Plaintiff was found to have abnormal gait and posture and reported "occasional" leg weakness and falls that "goes in spells" (Tr. 31). In July of 2017, Plaintiff "demonstrated normal gait, posture, sensory, motor neuro findings with no abnormal musculoskeletal findings" (Tr. 32). The ALJ also noted the episodic nature of Plaintiff's back pain. In October of 2016, Plaintiff presented with pain from shoulders to low back (Tr. 31). Between November of 2017 and August of 2018, Plaintiff reported chronic back pain (Tr. 32). In September of 2019, no abnormal gait or complaints of chronic pain were recorded (Tr. 32).[8]

Thereafter, the ALJ also noted "a substantial treatment" gap between September 2019 and April 2023 (Tr. 32). Following that gap, in April of 2023, the ALJ noted that Plaintiff returned to his primary care doctor, Dr. Cook, and reported that "he was unable to work due to ongoing back

[8] The ALJ also noted that Plaintiff underwent cardiac monitoring beginning in February of 2018 and discussed Plaintiff's cardiac impairments—noting that they were considered in assessing the RFC for sedentary exertion, limited postural activities, and limited exposure to hazards. (Tr. 32).

and leg pain, falls stiffness with sitting and difficulty rising from a seated position. His gait was found to be 'clearly abnormal/spastic/CP-type gait . . ." (Tr. 32). The ALJ then discussed Dr. Campbell's consultative examination in February of 2024, noting that "[o]n examination, the claimant exhibited normal station, but 'short-strided gait with low elevations' without the use of an assistive device." (Tr. 33). The ALJ also noted that Plaintiff had reported episodic symptoms to Dr. Campbell: "one day I can't do nothing and other days I can get up and walk around" (Tr. 33). The ALJ also discussed Plaintiff's April 2024 appointment with Dr. Cook and the ALJ reviewed those records as well—discussing them at length, noting that Plaintiff's "gait was found to be reeling, spastic, and unsteady …" (Tr. 32).

In other words, the ALJ clearly considered Plaintiff's treatment history and frequency of Plaintiff's symptoms as required by the regulations. *See* 20 C.F.R. § 404.1529(c)(ii), (v). The ALJ also considered Plaintiff's daily activities pursuant to 20 C.F.R. § 404.1529(c)(i). For example, the ALJ noted that Plaintiff reported to Dr. Campbell in 2024 that "he could brush his teeth, prepare meals, put on shirt or reach into cabinets, and drive independently and could [get] laundry out of dryer with accommodating position and if not more than 10 pounds from the floor" (Tr. 33). Accordingly, the ALJ complied with the two-step process required by 20 C.F.R. § 404.1529 and SSR 16-3p and found Plaintiff's symptoms to be more episodic than Plaintiff alleged.

Plaintiff argues that the ALJ only addressed the requisite factors "implicitly," which is insufficient. [Doc. 17 at Page ID # 602 (citing *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x. 254, 261 (6th Cir. 2015)]. However, Plaintiff's reliance on *Cox* is misplaced. While the Sixth Circuit Court of Appeals rejected the ALJ's "boilerplate" credibility finding, the court also found that the ALJ's discussion of the evidence failed to make clear her reasons for discrediting the claimant's testimony. *See Cox*, 615 F. App'x at 261. Here, the ALJ's discussion of the evidence is sufficient,

as the ALJ reviewed the medical evidence and the Plaintiff's testimony and found that Plaintiff's testimony was not entirely consistent with the medical record, which revealed that the symptoms were more episodic and intermittent than Plaintiff alleged.[9] In so doing, the ALJ provided a sufficient explanation for this Court to "trace the path of his reasoning." *See Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011). Ultimately, the ALJ's evaluation of Plaintiff's subjective complaints should not be disturbed absent "compelling reasons." *Ritchie*, 540 F. App'x at 511. The Court finds no such compelling reasons here. Furthermore, to the degree that Plaintiff is asking for the Court to re-weigh the evidence, resolve conflicts in evidence, or decide questions of credibility, the Court is prohibited from doing so. *See Garner*, 745 F.2d at 387.

### C. The ALJ's Decision is Supported by Substantial Evidence

The record and the ALJ's decision indicate the ALJ properly evaluated Plaintiff's alleged symptoms, weighed the opinion evidence, and considered all the other evidence in the record to arrive at a well-reasoned RFC. The ALJ also properly relied on the testimony of the VE at steps four and five. In short, the written decision reflects a "logical bridge between the evidence and the conclusion that the claimant is not disabled." *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260, at *3 (E.D. Tenn. July 19, 2010) (citation omitted). Accordingly, the Court concludes the ALJ's decision is supported by substantial evidence.

---

[9] To the degree that Plaintiff suggests that the ALJ erred by "never identif[ying] which specific statements from the testimony are inconsistent and never explains why those statements are discredited," [Doc. 17 at Page ID # 600] the Sixth Circuit has held that "there is no requirement that an ALJ specifically analyze each and every symptom and complaint." *See Rocky W. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-cv-00124, 2023 WL 4116606, at *9 (S.D. Ohio June 22, 2023); *See also Chandler v. Comm'r of Soc. Sec.*, No. 2:13-cv-324, 2014 WL 2988433, at *11 (S.D. Ohio July 1, 2014) ("[T]he fact that an ALJ did not specifically state every piece of evidence or every symptom is not an error").

Because the ALJ had "the enormous task of making sense of the record, reconciling conflicting medical opinions and evidence, and weighing the credibility of [Plaintiff's] subjective complaints," *Buxton*, 246 F.3d at 775, this Court's review is limited to whether the ALJ relied on evidence that "a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Comm'r of Soc. Sec.*, No. 21-1384, 2022 WL 740692, at *2 (6th Cir. Jan. 4, 2022) (quoting *Biestek*, 139 S. Ct. at 1154). In assessing Plaintiff's RFC, the ALJ explained the evidence that supported his conclusion and why he considered certain evidence less persuasive, and the Court finds the ALJ's findings and conclusions are adequately supported. *See Schmiedebusch*, 536 F. App'x at 646 ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . . ." (citation omitted)).

## V. CONCLUSION

Accordingly, it is **ORDERED** that:

(1) Plaintiff's request for relief [Doc. 1] is **DENIED**; and

(2) the Commissioner's request that the final decision denying benefits be affirmed [Doc. 24] is **GRANTED**; and

(3) this case is **CLOSED**.

SO ORDERED.

ENTER:

/s/

MIKE DUMITRU
UNITED STATES MAGISTRATE JUDGE